**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BHARATHM RAM NAGAIAH**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 23-2077-KSM** |
| **JOHN M. ALLEN, et al.**, | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                            **May 27, 2025**

In *Loper Bright*, the Supreme Court reshaped administrative law. But this redesign was not a revolution, and the Court did not call for a complete overhaul of all agency action. Here, Plaintiff Bharathm Ram Nagaiah relies on *Loper Bright* but stretches the landmark decision beyond its limits. Three years ago, Nagaiah petitioned the United States Citizenship and Immigration Services ("USCIS") for an extraordinary-ability visa, but USCIS denied his petition. He now challenges that denial, arguing it was arbitrary and capricious. He also attacks USCIS's way of adjudicating extraordinary-ability visas, claiming its approach misinterprets a governing statute, violates a binding regulation, and stems from a legislative rule that was disguised as a policy memorandum. Both he and Defendants—federal officials tasked with evaluating visa applications—have moved for summary judgment. For the reasons below, the Court grants Defendants' motion for summary judgment and denies Nagaiah's motion.

## I.     Background

### A.     The "Extraordinary-Ability" Visa

In 1990, Congress wanted to bring the best and the brightest from around the world to the United States. So it created an employment-based immigration preference for foreign nationals

with "extraordinary ability in the sciences, arts, education, business, or athletics."[1]  8 U.S.C

§ 1153(b)(1)(A).  "Extraordinary ability" means "a level of expertise indicating that the

individual is one of that small percentage who have risen to the very top of the field of

endeavor."  8 C.F.R. § 204.5(h)(2).  The extraordinary-ability visa is available to foreign

nationals whose extraordinary abilities have "been demonstrated by sustained national or

international acclaim and whose achievements have been recognized in the field through

extensive documentation."  8 U.S.C. § 1153(b)(1)(A)(i).  These visas have allowed "Nobel

laureates, world class athletes, and renowned artists and musicians to live and work in the United

States."  *Amin v. Mayorkas*, 24 F.4th 383, 386 (5th Cir. 2022).

Extraordinary-ability visas are highly coveted for several reasons.  First, if a foreign

national qualifies for this visa, he or she does not need to have an offer of employment in the

United States.  *See* 8 C.F.R. § 204.5(h)(5).  Second, recipients of this visa can avoid the "time-

consuming labor certification process" that other visa applicants must go through.  *Jafarov v.

U.S. Citizenship & Immigr. Servs.*, No. 23 CIV. 3372 (PAE), 2024 WL 69056, at *1 (S.D.N.Y.

Jan. 5, 2024) (internal quotations omitted).  Third, "because there is little backlog for such

visas," extraordinary-ability visa recipients can "avoid the years-long waiting periods that apply

to most other employment-based immigration categories."  *Id.* (internal quotations omitted).

A foreign national seeking this coveted visa, like Nagaiah, "must file an I-140 petition

with USCIS, indicating that [he] intend[s] to continue working in the United States, and that this

work will substantially and prospectively benefit the United States."  *Bhanu v. Garland*, No. CV

22-103, 2023 WL 6119357, at *1 (E.D. Pa. Sept. 18, 2023) (citing 8 U.S.C. § 1153(b)(1)(A)).

With his petition, he must submit accompanying evidence that he "has sustained national or

---

[1] Though the statute uses the term "alien," the Court will use the phrase foreign national as an
equivalent term.

international acclaim and that [his] achievements have been recognized in [his] field. This can

be shown by either by earning a major, internationally recognized award, such as a Nobel Prize,

or alternatively by meeting [at least] three of the ten criteria under 8 C.F.R. § 204.5(h)(3)(i)—(x),

or other comparable evidence." *Id.* (citing 8 C.F.R. § 204.5(h)(3), (4)).

USCIS reviews extraordinary-ability visa petitions through a two-step process. *See*

United States Citizenship and Immigration Services, 6 USCIS Policy Manual F.2,

https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2 (last visited May 27, 2025). At

the first step, USCIS determines whether "the petitioner has (1) won a major, internationally

recognized one-time achievement; or, alternatively, (2) that they otherwise meet three of the

enumerated criteria" in 8 C.F.R. § 204.5(h)(3)(i)–(x). *Bhanu*, 2023 WL 6119357, at *1. If the

petitioner passes the first step, USCIS then considers "the totality of the evidence for a final

merits determination of whether the petitioner has sustained national or international acclaim,

and whether their achievements indicate that they are at the very top of the field of endeavor."

*Id.* Courts refer to this two step-approach as the "*Kazarian* policy" because USCIS formally

adopted this approach in a policy memorandum in response to the Ninth Circuit's decision in

*Kazarian v. United States Citizenship & Immigration Servs.*, 596 F.3d 1115 (9th Cir. 2010). *See*

*Etsy, Inc. v. Jaddou*, No. 4:22CV3022, 2023 WL 3689555, at *3 (D. Neb. May 25, 2023).

"Many federal courts have described the above two-step process as extremely restrictive."

*Kapoor v. U.S. Citizenship & Immigr. Servs.*, 763 F. Supp. 3d 247, 252 (E.D.N.Y. 2025)

(internal quotations omitted).

### B.    USCIS Denies Nagaiah's Extraordinary-Ability Visa Petition

Nagaiah is a foreign national from India with two decades of experience with Oracle

applications and solutions. (Doc. No. 28-5 at 46.) In September 2022, Nagaiah filed an I-140

petition seeking classification as a person with "extraordinary ability" pursuant to 8 U.S.C.

§ 1153(b)(1)(A).  (*Id.* at 26–45.)  In his petition, Nagaiah sought to satisfy six of the ten

evidentiary criteria set forth in 8 C.F.R. § 204.5(h)(3).  These six criteria are:

> (1) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> (2) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (3) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
>
> (4) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
>
> (5) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
>
> (6) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field[.]

(*Id.* at 47–48 (citing 8 C.F.R. § 204.5(h)(3)).)  Under each criterion, Nagaiah submitted

accompanying evidence and legal argument.  (*Id.* at 47–56.)

On October 7, 2022, USCIS issued a request for evidence because it needed additional

evidence to evaluate his petition.  (*Id.* at 17.)  In its request, USCIS went through each

evidentiary criterion that Nagaiah had attempted to meet and evaluated whether his evidence did

in fact meet that criterion.

*First*, USCIS determined that Nagaiah's initial evidence did not show that he was a member of a group that requires outstanding achievements for its members.  (*Id.* at 18–19.) Though Nagaiah claimed to be a senior member of "the prestigious Institute of Electrical and Electronics Engineers ("IEEE") (*id.* at 52), he submitted only an IEEE senior membership application (Doc. No. 28-7 at 20).  Because there was "no evidence that [IEEE] conferred membership to" him, USCIS determined that he did not meet this criterion.  (Doc. No. 28-5 at 19.)

*Second*, USCIS found that Nagaiah failed to show that he judged the work of others in his field.  (*Id.* at 19–20.)  Under this criterion, Nagaiah had submitted a photocopied page of a book with his headshot and a short description of his background.  (Doc. No. 28-7 at 61.)  Because this evidence did not show that he had judged the work of others in his field, USCIS concluded that he had not satisfied this criterion either.  (Doc. No. 28-5 at 19–20.)

*Third*, USCIS ruled that Nagaiah's evidence did not show that he made an original contribution of major significance to his field.  (*Id.* at 20–21.)  To meet this criterion, Nagaiah presented a patent application that he had filed related to face recognition and identification systems.  (Doc. No. 28-7 at 49–57.)  Though USCIS recognized that a patent could show an original contribution to his field, it said Nagaiah lacked evidence that showed his patent was of major significance to his field.  (Doc. No. 28-5 at 20.)

*Fourth*, USCIS determined that Nagaiah's evidence failed to show his authorship of scholarly articles in his field that were published in major media.  While Nagaiah offered evidence that he wrote a chapter of a book (Doc. No. 28-7 at 68–71), he did not submit evidence of the book's circulation statistics.  So USCIS determined that he had not shown his scholarship

was published in major media, and thus he had not satisfied this criterion.  (Doc. No. 28-5 at 20–21.)

*Fifth*, USCIS found that Nagaiah had not shown that he performed a leading or critical role in a company with a distinguished reputation.  (*Id.* at 22.)  To meet this criterion, he presented letters of support from his former employers, including RapidFlow Inc.'s ("RapidFlow") CEO and Principal Solution Architect as well as a letter from Inspirage LLC's ("Inspirage") co-founder.  (Doc. No. 28-7 at 3–5, 7–8, 16–18.)  USCIS found that Nagaiah had not met this criterion because he had failed to show that RapidFlow and Inspirage had distinguished reputations.  (Doc. No. 28-5 at 22.)

*Sixth*, USCIS ruled that Nagaiah did show that he commands a high salary.  (*Id.* at 23.)  To meet this criterion, he submitted his pay stubs and W-2s.  (Doc. No. 28-7 at 32–37.)  Because his evidence proved that he commanded a high salary, USCIS determined that he had satisfied this criterion.  (Doc. No. 28-5 at 23.)

Ultimately, USCIS determined that Nagaiah had satisfied only one evidentiary criterion in his visa petition.  But it gave Nagaiah a chance to cure these deficiencies and directed him to file additional evidence by January 3, 2023.  (*Id.* at 17.)  Two weeks after this deadline, Nagaiah filed his response to USCIS's request for evidence.[2]  (Doc. No. 28-3 at 33.)  In it, he submitted additional evidence and argument under the five evidentiary criteria that USCIS had said were deficient.  (*Id.* at 33–44.)

In February 2023, USCIS denied Nagaiah's petition.  (*Id.* at 14.)  This time, USCIS found that Nagaiah had met two evidentiary criteria in 8 C.F.R. § 204.5(h)(3)— that he judged the

---

[2] Although Nagaiah had missed the deadline, USCIS accepted his response because its deadlines were automatically extended by 60 days due to COVID-19.

work of others in his field and that he commanded a high salary. (*Id.* at 17, 19.) But for the other four criteria that Nagaiah sought to satisfy, USCIS determined that he had not met them.

USCIS first determined that he had not shown membership in an association that requires outstanding achievements for membership. (*Id.* at 16–17.) Though Nagaiah had submitted proof that he was a senior member of IEEE, USCIS ruled that he had not met this criterion because outstanding accomplishments were not required for senior IEEE membership. (*Id.*) It next found that Nagaiah had failed to show an original contribution of major significance in the field because he offered no new evidence to show that his patent was of major significance in his field. (*Id.* at 17–18, 38–39.) USCIS then ruled that Nagaiah had not shown evidence of authorship of scholarly articles in his field, in professional or major trade publications or other major media. While he had written a book chapter and a scholarly article, he had not shown that this book or article were ever published in major media. (*Id.* at 18.) Last, USCIS determined that Nagaiah had failed to show his leading or critical role in an organization with a distinguished reputation. (*Id.* at 18–19.) Though he submitted proof that these companies had won some awards, USCIS found that these awards did not show that these companies had distinguished reputations. (*Id.*) Because he did not meet at least three of the ten criteria in 8 C.F.R. § 204.5(h)(3), USCIS denied his petition without making a final merits determination. (*Id.* at 20.)

### C.    Nagaiah Sues, and USCIS Reconsiders its Denial of his Petition

On May 31, 2023, Nagaiah brought this suit under the Administrative Procedure Act ("APA"). In his Complaint, he challenged the denial of his petition as arbitrary and capricious and sought injunctive relief to postpone the denial of his petition. (Doc. No. 1 at 9–10.) He named as Defendants four federal officials in their official capacities, including Mary Elizabeth

Brennan Seng, Acting Director of USCIS at the Texas Service Center; Merrick Garland, Attorney General of the United States; Alejandro Mayorkas, Secretary of the United States Department of Homeland Security; and Ur Mendoza Jaddou, Director of USCIS.[3]  (*Id.* at 1.)

Before Defendants filed their Answer, USCIS reopened its consideration of his petition. (Doc. No. 8; Doc. No. 28-3 at 12–13.)  In its reconsideration order, USCIS vacated its original decision, ordered that Nagaiah be issued a notice of intent to deny ("NOID") his petition, and gave him thirty-three days to submit additional evidence from the issuance of the NOID.  (Doc. No. 28-3 at 13.)

In the NOID, USCIS found that Nagaiah had met three of the ten evidentiary criteria to show extraordinary ability.  (*Id.* at 6.)  Specifically, it found that he had commanded a high salary, judged the work of others, and authored scholarly works in his field that were published in major media.  (*Id.*)  But USCIS continued to find that Nagaiah had not shown that he made an original contribution of major significance, had performed a critical or leading role for a distinguished company, or was a member of an association that requires outstanding achievement.  (*Id.*)  Still, because he had satisfied three evidentiary criteria, USCIS proceeded to step two—the final merits determination.  (*Id.* at 6–7.)  At the second step, USCIS evaluated whether Nagaiah had demonstrated that he is one of that small percentage who have risen to the very top of his field and that he has sustained national or international acclaim in his field.  (*Id.*)

USCIS determined that Nagaiah fell short at the final merits determination.  Though Nagaiah's evidence showed his skillset in his industry, USCIS found that his evidence did not show that he had sustained national or international acclaim, nor did it show that he had risen to

---

[3] Because these Defendants are no longer in office, their successors are automatically substituted as Defendants in this case under Federal Rule of Civil Procedure 25(d).  So, John M. Allen replaces Mary Elizabeth Brennan Seng, Pamela Bondi replaces Merrick Garland, Kristi Noem replaces Alejandro Mayorkas, and Kika Scott replaces Ur Mendoza Jaddou.  (*See* Doc. No. 45.)

the top of his field.  (*Id.* at 6–9.)  USCIS noted that Nagaiah lacked evidence that he became an

IEEE senior member because of sustained national acclaim or that his membership demonstrated

his excellence in his field.  (*Id.* at 7.)  Likewise, his scholarly works did not automatically place

him at the top of his field.  (*Id.* at 7–8.)  Indeed, USCIS commented that the evidence failed to

show what sets him apart from others in his field.  (*Id.* at 8.)  USCIS next explained that there

was not enough evidence that his one patent established that he has risen to the very top of the

field.  (*Id.*)  Last, USCIS found that while his high salary demonstrated recognition in his field,

the record did not show that his earnings were so high as to indicate that he is one of a small

percentage at the top of his field, or that his salary is reflective of sustained acclaim.  (*Id.* at 8–9.)

In short, Nagaiah's evidence did not show his sustained national or international acclaim, nor did

it demonstrate that he was one of the small percentage of people at the top of his field.

>        **D.        Nagaiah Responds to the NOID, and USCIS Denies his Petition Again**

On September 18, 2023, Nagaiah responded to USCIS's NOID.  (Doc. No. 28-2 at 19.)

In it, Nagaiah first argued that USCIS had incorrectly found that his IEEE membership did not

require outstanding achievement, as judged by recognized experts in the field.  (*Id.* at 21.)  He

submitted the IEEE bylaws, which states that a decade of professional experience and

"significant performance" are required for senior membership.  (*Id.* at 21–22.)  Plus, his

application had received endorsements from three international experts, meaning his eligibility

was judged by international experts.  (*Id.* at 22.)  He next claimed that he worked for

organizations with distinguished reputations based on his work for RapidFlow and Inspirage.

(*Id.* at 23.)  To show that these companies had distinguished reputations, Nagaiah pointed to

awards that they had won, their partnership level with Oracle, and their clients.  (*Id.* at 23–24.)

But in his response, he did not provide any additional evidence to show that he had performed a

leading or critical role at these companies. Nor did he respond to USCIS's determination that he had not made an original contribution of major significance to his field. Nevertheless, Nagaiah contended that when all the evidence was taken together, he had shown that he is a foreign national with extraordinary ability. (*Id.* at 24–28.)

Unmoved by his response, USCIS denied Nagaiah's petition on October 23, 2023. (*Id.* at 1.) At step one, USCIS first noted that Nagaiah had abandoned his argument that his patent counted as an original contribution of major significance to his field. (*Id.* at 5.) USCIS next addressed Nagaiah's arguments about his senior IEEE membership. Per the bylaws, IEEE applicants could use educational experience toward the ten-year experience requirement, and they could show "significant performance" through substantial job responsibilities. (*Id.* at 4–6.) Given these not-so-stringent requirements, USCIS concluded that IEEE did not reserve senior memberships for applicants with outstanding achievements. (*Id.*) USCIS then found that Nagaiah had failed to respond to the NOID with respect to its determination that his evidence failed to show that he performed a leading or critical role for RapidFlow or Inspirage. (*Id.* at 6.) Instead of addressing his leading or critical role at these companies, Nagaiah's response just focused on these companies' accomplishments. (*Id.*) Still, because Nagaiah had met three of the ten criteria, USCIS proceeded to step two—the final merits determination. (*Id.*)

At the final merits determination, USCIS ruled that Nagaiah failed to show sustained national or international acclaim and that he has risen to the top of his field. First, USCIS said the record evidence did not back up Nagaiah's claim that only eight percent of IEEE members earned senior membership. (*Id.* at 6–7.) And the qualifications for senior IEEE membership did not require outstanding accomplishments. (*Id.*) Second, USCIS explained that while it reviewed the letter from Javid Ur Rahaman (who invited Nagaiah to participate in the book review), the

letter did not show that Nagaiah was sought as a reviewer because of his sustained national or international acclaim.  (*Id.* at 7.)  Third, Nagaiah's authorship of articles and a patent did not reflect that he is at the very top of the field because he had failed to show the significance of his authorship or explain how his publications and patent work compared to others in his field.  (*Id.* at 8.)  Fourth, Nagaiah failed to provide "objective documentary evidence" that the roles he played at RapidFlow and Inspirage "resulted in sustained national or international acclaim."  (*Id.* at 8-9.)  Fifth, USCIS disputed Nagaiah's claim that his salary dwarfs the average compensation for computer systems analysts in Pennsylvania.  (*Id.* at 9.)  USCIS observed that throughout the process, Nagaiah had argued that he had extraordinary ability as a "digital solutions architect." (*Id.*)  Thus, the comparison was not appropriate.  (*Id.*)  In sum, Nagaiah failed the final merits determination because he had not shown sustained acclaim and that he is one of a small percentage of people at the top of his field.

### E.    Nagaiah files an Amended Complaint

One month after USCIS denied his petition in October 2023, Nagaiah filed an Amended Complaint.  (Doc. No. 10 at 4.)  In it, he brought the same two claims as before, but he challenged USCIS's latest decision to deny his petition.  (*Id.* at 11–14.)  Defendants filed their Answer in December 2023, denying that USCIS's decision was arbitrary and capricious.  (Doc. No. 15.)

In January 2024, the Court entered an order staying this case until the Supreme Court ruled on *Relentless, Inc. v. Department of Commerce* and *Loper Bright Enterprises v. Raimondo*. (Doc. No. 20.)  After the Supreme Court ruled on these cases, the Court lifted the stay and ordered the parties to provide a status report.  (Doc. No. 23.)  The parties did so, and the Court entered a Scheduling Order that directed Nagaiah to file his Second Amended Complaint no later

than July 12, 2024.  (Doc. No. 27.)  The Court also ordered Defendants to file a certified administrative record by July 12, 2024, and set the summary judgment deadline for September 10, 2024.  (*Id.*)

On July 12, 2024, Nagaiah filed his Second Amended Complaint.  (Doc. No. 29.)  In it, he now brings four claims against Defendants.  Count I alleges that USCIS violated the APA by arbitrarily and capriciously denying his extraordinary-ability visa petition.  (*Id.* at 15–16.)  Count II seeks injunctive relief to "postpone the effective date" of the denial of his petition pursuant to 5 U.S.C. § 705.  (*Id.* at 16.)  Count III seeks declaratory judgment that USCIS's *Kazarian* policy is unlawful because it is a "substantive, legislative rule change" that did not go through notice-and-comment rulemaking.  (*Id.* at 16–17.)  Count IV is styled as an APA claim and asks the Court to find that the *Kazarian* policy violates the governing statute.  (*Id.* at 17–18.)  Defendants move for summary judgment on all claims.  (Doc. No. 34.)  Nagaiah also moves for summary judgment.  (Doc. No. 35.)  The Court held oral argument on the cross-motions for summary judgment on May 7, 2025.  (Doc. No. 42.)

## II.    Standard of Review

"Federal Rule of Civil Procedure 56, which governs summary judgment, operates differently in an appeal of an administrative agency's decision under the APA."  *Bhanu*, 2023 WL 6119357, at *4.  "Instead of considering whether there are genuine disputes of material fact, the district court sits as an appellate tribunal."  *Am. Bioscience Inc., v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  *Stuttering Found. of Am. v. Springer*,

498 F. Supp. 2d 203, 207 (D.D.C. 2007) (internal quotations omitted).  Indeed, "[w]here, as here,

a party seeks judicial review of agency action, summary judgment is appropriate, since whether

an agency action is supported by the administrative record and consistent with the APA standard

of review is decided as a matter of law."  *Kapoor*, 763 F. Supp. 3d at 254 (internal quotations

omitted).

A district court reviewing an agency decision shall "hold unlawful and set aside agency

action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law."  5 U.S.C. § 706(2)(a).  "Under the 'arbitrary and

capricious' standard[,] the scope of review is a narrow one whereby a reviewing court must

'consider whether the decision was based on a consideration of the relevant factors and whether

there has been a clear error of judgment.'"  *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.,*

*Inc.*, 419 U.S. 281 (1974).  This "deferential standard . . . presume[s] the validity of agency

action," *SBC Inc. v. Fed. Commc'ns Comm'n*, 414 F.3d 486, 496 (3d Cir. 2005), and such

deference is "especially appropriate in the immigration context," *Immigr. & Naturalization Serv.*

*v. Aguirre-Aguirr*, 526 U.S. 415, 416, 425 (1999).

An agency action "would be arbitrary and capricious if the agency has relied on factors

which Congress has not intended it to consider, entirely failed to consider an important aspect of

the problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983).  "If the record before the agency does not support the agency action, if

the agency has not considered all relevant factors, or if the reviewing court simply cannot

evaluate the challenged agency action on the basis of the record before it, the proper course,

except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).  But courts "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman*, 419 U.S. at 286.  To reverse USCIS's decision, the Court must find that "no reasonable factfinder" could have come to USCIS's conclusion.  *Byrne v. Beers*, No. 13-6953, 2014 WL 2742800 at *3 (E.D. Pa. June 17, 2014) (internal quotations omitted).

## III.    Discussion

In his Second Amended Complaint, Nagaiah brings four claims against Defendants, which fall into one of two groups.  The first group challenges the *Kazarian* policy and its two-step approach to adjudicating extraordinary-ability visa petitions.  Nagaiah argues that the final merits determination, step two of the *Kazarian* policy, violates the governing statute and the agency's own regulations.  He further contends that the *Kazarian* policy memorandum was a legislative rule, which required (but did not undergo) notice-and-comment rulemaking.  The second group attacks the specific agency action at issue here—the denial of Nagaiah's extraordinary-ability visa petition.  Nagaiah argues that USCIS's decision was arbitrary and capricious.  The Court addresses each group of challenges in turn.

### A.    Nagaiah's Challenges to the "Final Merits Determination" Fail

In the first group, Nagaiah brings three discrete challenges against USCIS's two-step approach to adjudicating extraordinary-ability visa petitions.  First, he argues that USCIS's governing statute does not allow for the "agency's final merits determination test."  (Doc. No. 35 at 22.)  Second, he asserts that "the agency's binding regulations do not allow for the application of the agency's final merits determination test."  (*Id.* at 16.)  Third, he claims that "the agency unlawfully adopted its final merits determination test [in a policy memorandum] without notice

14

and comment rulemaking." (*Id.* at 26.) Defendants counter that the agency's two-step approach is consistent with the governing statute and binding regulations, and they contend the *Kazarian* policy memorandum is not a legislative rule that required notice-and-comment rulemaking. (Doc. No. 34 at 15–24.) For the reasons below, the Court agrees with Defendants and grants Defendants' motion for summary judgment on Counts III and IV of Nagaiah's Second Amended Complaint.

### 1. The Final Merits Determination is Consistent with the Governing Statute

Nagaiah first argues that USCIS's "final merits determination" violates the governing statute. (Doc. No. 35 at 22.) Though his argument is a little unclear, he appears to be asserting that USCIS's two-step method violates 8 U.S.C § 1153(b)(1)(A) because USCIS evaluates whether petitioners meet the definition of extraordinary ability set forth in 8 C.F.R. § 204.5(h)(2) as part of its final merits determination. (*Id.* at 24.) Nagaiah contends that while the statute does not define extraordinary ability, USCIS was not allowed to define it. (*Id.* at 26.) Instead, USCIS could interpret only the phrases "sustained national or international acclaim," "achievements . . . recognized in the field," and "extensive documentation" because those terms modify extraordinary ability. (*Id.*) In short, he argues that USCIS unlawfully added to the statute by making petitioners show that they meet the definition of extraordinary ability set forth in 8 C.F.R. § 204.5(h)(2).

Defendants disagree. They argue that because the statute does not define the term "extraordinary ability," USCIS had the power to do so. (Doc. No. 38 at 8.) And, they say, Nagaiah's argument would leave the term "extraordinary ability" undefined even though it is a key part of the statute. (*Id.* at 8–9.) Nor does the statute state that sustained national acclaim and extensive documentation are *sufficient* to show extraordinary ability. (*Id.* at 9–10.) Indeed, one

could have national acclaim and extensive documentation but still not possess extraordinary ability relative to the global population.  (*Id.*)  Last, they note that USCIS's definition of "extraordinary ability" in 8 C.F.R. § 204.5(h)(2) tracks the plain meaning of the term.

The Court agrees with Defendants.  "As in any statutory construction case," the Court starts with "the statutory text."  *United States v. Johnman*, 948 F.3d 612, 616 (3d Cir. 2020).  To qualify as a foreign national with extraordinary ability, the statute lays out three requirements:

### (A) Aliens with extraordinary ability

> An alien is described in this subparagraph if--
>
> (i)      the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
>
> (ii)     the alien seeks to enter the United States to continue work in the area of extraordinary ability, and
>
> (iii)    the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C § 1153(b)(1)(A).

As the text shows, the statute leaves the term "extraordinary ability" undefined.  Nagaiah argues that Congress did not allow USCIS to define this term because the statute provides "guardrails" by requiring extraordinary ability be shown through sustained acclaim and achievements backed up by extensive documentation.  (Doc. No. 35 at 23.)  But while the statute spells out how extraordinary ability must be shown, it does not say what extraordinary ability is. And as extraordinary ability is an "essential requirement" under this statute, *Amin*, 24 F.4th at 392, USCIS could "fill up the details of a statutory scheme" by defining the term, *Loper Bright*

*Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (internal quotations omitted). Indeed, Congress contemplated such action by granting the Secretary of Homeland Security the power to "establish such regulations . . . necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. § 1103.

The more interesting question in the wake of *Loper Bright* is not whether USCIS could define "extraordinary ability" but whether USCIS's definition of the term is accurate. In 1991, USCIS defined "extraordinary ability as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). Previously, courts would have deferred to this interpretation so long as it was reasonable. But under *Loper Bright*, "courts may [no longer] rely on what agencies say; we must read statutes for ourselves, exercising our own judgment." *Cent. States, Se. & Sw. Areas Pension Fund v. Laguna Dairy, S. De R.L. De C.V.*, 132 F.4th 672, 688 (3d Cir. 2025) (Bibas, J., dissenting). To determine whether USCIS's definition is correct, the Court applies the "traditional tools of statutory construction—primarily text, structure, and context." *Id.* Here, these tools of statutory construction confirm that USCIS's interpretation of "extraordinary ability" is correct.

*Text*. In 1990, Congress passed the law that created the "extraordinary ability" category of visas. *See* Immigration Act of 1990, Pub. L. No. 101–649, 104 Stat. 4978, 4987–88 (1990). To furnish a definition of "extraordinary ability," we look to contemporaneous "dictionary definitions to determine the ordinary meaning of" the term. *United States v. Husmann*, 765 F.3d 169, 173 (3d Cir. 2014). One year before Congress passed this statute, the Oxford English Dictionary defined "extraordinary" as "of a kind not usually met with; exceptional; unusual; singular." *Extraordinary* (def. 3), *Oxford English Dictionary* (2d ed. 1989);

17

*accord Extraordinary*, *Black's Law Dictionary* (6th ed. 1990) ("not usual, regular, or of a customary kind; remarkable; uncommon; rare."). And it defined "ability" as "mental power or capacity; talent, cleverness." *Ability* (def. 5), *Oxford English Dictionary* (2d ed. 1989); *accord Ability*, *Black's Law Dictionary* (6th ed. 1990) ("Capacity to perform an act or service."). These definitions—supplied by a dictionary that the Supreme Court has called "one of the most authoritative on the English language"—show that the plain meaning of "extraordinary ability" is exceptional, unusual, or singular capacity, talent, or cleverness in a field. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569 (2012). USCIS's regulation tracks this plain meaning, defining "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). Thus, the Court agrees with the Fifth Circuit that USCIS's definition of "extraordinary ability" is "consistent with the best meaning of the statute." *Joseph v. Dir. of Tex. Serv. Ctr., U.S. Citizenship & Immigr. Servs.*, No. 24-40249, 2025 WL 458001, at *1 n.2 (5th Cir. Feb. 11, 2025).

     *Structure*. This exacting definition of "extraordinary ability" also makes sense based on the structure of the statute. Shortly after the subsection that offers visas to foreign nationals with extraordinary ability, Congress created a separate visa for foreign nationals of "exceptional ability." 8 U.S.C. § 1153(b)(2). Because Congress created a "visa with less stringent requirements," it is clear that "extraordinary ability" must be a higher standard than "exceptional ability." *Joseph*, 2025 WL 458001, at *1; *see also Kazarian*, 596 F.3d at 1120 (distinguishing "*extraordinary* ability . . . from *exceptional* ability" because the latter requires "a lesser showing of ability"). Thus, USCIS's exacting definition of extraordinary ability not only tracks its

ordinary meaning, but it also fits the structure of the statute by distinguishing extraordinary ability from exceptional ability.

Nagaiah does not meaningfully argue that USCIS's definition of extraordinary ability is inaccurate.  Though he claims that USCIS relied too heavily on the legislative history of the statute to define "extraordinary ability," both the plain meaning of the term and the structure of the statute show that USCIS's definition of "extraordinary ability" is correct.  (Doc. No. 35 at 22–26.)  The Court thus rejects Nagaiah's argument that USCIS could not define "extraordinary ability" as used in the statute and that USCIS's definition is inaccurate.

The Court likewise rejects Nagaiah's claim that the "final merits determination" violates the statute because it evaluates whether the petitioner has met the exacting definition of extraordinary ability.  *See Amin*, 24 F.4th at 392 (ruling, without any deference to USCIS, that the final merits determination "is consistent with the governing statute and regulation").  This definition has been on the books since 1991, and the regulation has remained the same since then.  *See* 8 C.F.R. § 204.5(h)(2).  And far from subverting the meaning of the statute, the Court finds that the "final merits determination speaks to the statute's requirement of 'extraordinary ability which has been demonstrated by sustained national or international acclaim.'"  *Id.* (quoting 8 U.S.C. § 1153(b)(1)(A)).  Thus, the final merits determination is consistent with the statute.

### 2.    *The Final Merits Determination is Consistent with USCIS Regulations*

Nagaiah next argues that the final merits determination violates 8 C.F.R. § 204.5(h). (Doc. No. 35 at 16–22.)  He says that the regulation "clearly and unambiguously requires nothing more than a showing that a particular noncitizen meets the criteria of 8 C.F.R. § 204.5(h)(3) to demonstrate their possession of extraordinary ability."  (*Id.* at 21.)  In support of his argument,

Nagaiah points to the regulation's text, structure, and history as well as USCIS's prior interpretations of the regulation.[4]  (*Id.* at 16–22.)  Because a petitioner must satisfy only 8 C.F.R. § 204.5(h)(3) to establish eligibility for this visa, he says, the final merits determination violates the regulation and is thus an *ultra vires* agency action.  (*Id.*)  *See Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) ("*Ultra vires* claims are confined to extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court.") (cleaned up)).  Defendants disagree.  (Doc. No. 38 at 12–15.)  They contend that the final merits determination is entirely consistent with the regulation and is thus not an *ultra vires* agency action.  (*Id.*)  As explained below, the Court agrees with Defendants.

 *Text.*  The Court starts again, as it must, with the text of the regulation.  After the regulation defines "extraordinary ability," it sets forth the "*initial evidence*" required for foreign nationals who seek to qualify for the extraordinary-ability visa.  *Id.* at § 204.5(h)(3) (emphasis added).  This initial evidence must "accompany[ ]" the visa petition and show that the foreign national "has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise."  *Id.*  "Such evidence shall include evidence of a one-time achievement (that is, a major, international recognized award), or *at least* three of the" ten evidentiary criteria in 8 C.F.R. § 204.5(h)(3)(i)–(x).  *Id.* (emphasis added).  If these "standards do

---

[4] Nagaiah spends several pages of his brief arguing about *Auer* deference, which is when a court gives controlling weight to an agency's interpretation of its own regulation because the regulation's text is genuinely ambiguous.  (Doc. No. 35 at 17–18, 21–22.)  Because the Court independently finds that the final merits determination is consistent with the statute and regulation, the Court need not defer to USCIS's interpretation of the regulation under *Auer*.  *See Amin*, 24 F.4th at 392 (finding it unnecessary to decide whether *Auer* deference was appropriate because "the result is the same as if [the court] deferred").

not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility." *Id.* at § 204.5(h)(4).

Nagaiah reads this regulation as a "complete rule setting a complete standard." (Doc. No. 35 at 20.) He argues that the first sentence sets forth a comprehensive evidentiary requirement, and the use of "such evidence" in the second sentence refers back to this evidentiary requirement. So, he says, a petitioner necessarily qualifies for an extraordinary-ability visa once he or she satisfies 8 C.F.R. § 204.5(h)(3).

The Court disagrees with Nagaiah's reading for three reasons. *First*, "the regulation does not say that meeting the regulatory criteria presumptively qualifies an applicant for a visa." *Amin*, 24 F.4th at 391.[5] Rather, it sets forth "what evidence must accompany a petition." *Id.* (cleaned up). *Second*, Nagaiah's interpretation ignores the fact that the regulation labels these categories of evidence as "initial evidence." 8 C.F.R. § 204.5(h)(3). If, as he claims, this rule set a complete standard to evaluate visa petitions, the label of "initial evidence" would make no sense. *Third*, the regulation requires petitioners to submit evidence of "*at least three*" criteria. *Id.* (emphasis added). If, as Nagaiah claims, "satisfying three criteria were enough, why would the agency invite proof of more?" *Amin*, 24 F.4th at 391.

In short, the text of the regulation contemplates an additional step—like a final merits determination—after a petitioner submits his or her *initial* evidence to satisfy the evidentiary requirement in 8 C.F.R. § 204.5(h)(3). Put otherwise, § 204.5(h)(3) establishes a necessary, not sufficient, evidentiary requirement for a petitioner who seeks an extraordinary-ability visa. *See*

---

[5] Nagaiah argues that the Court should not look to the Fifth Circuit's decision in *Amin* because it was decided before the Supreme Court overturned *Chevron* deference in *Loper Bright*. (Doc. No. 40 at 4.) Yet in *Amin*, the Fifth Circuit interpreted the regulation without *any* deference to the agency. *Amin*, 24. F4th at 391 n.6. So, while *Amin* is only persuasive authority, the Court disagrees with Nagaiah's assertion that it is outdated persuasive authority.

*Viswanadha v. Mayorkas*, 660 F. Supp. 3d 759, 770–71 (N.D. Ind. 2023) (interpreting a similar regulation and finding that the label "initial evidence" and the requirement that a petitioner meet "at least" two criteria "indicates that the regulation was merely setting forth a necessary condition, rather than a sufficient condition"). The Court agrees with the Fifth Circuit that "the regulation's initial evidence provision" effectuates the "statute's extensive documentation requirement," while "the final merits determination speaks to the statute's requirement of extraordinary ability" that has been demonstrated through "sustained national or international acclaim." *Amin*, 24 F.4th at 391–92 (internal quotations omitted). This reading harmonizes the statute, regulation, and two-step approach to evaluating extraordinary-ability visa applications.

*Context.* Nagaiah's contextual argument fares no better than his textual one. Nagaiah says that because § 204.5(h)(4) lets petitioners meet the evidentiary requirement of § 204.5(h)(3) through comparable evidence, the Court must draw a negative inference that § 204.5(h)(3) establishes an exhaustive requirement. (Doc. No. 35 at 20–21.) Not so. Section 204.5(h)(4) is a savings clause that allows petitioners to submit "comparable evidence" if their occupation does not lend itself to the criteria at § 204.5(h)(3)(i)–(x). This subsection merely provides an alternative pathway for petitioners to meet the initial evidentiary requirement; it does not change the plain meaning of § 204.5(h)(3), nor does it require the Court to draw a negative inference that § 204.5(h)(3) is all encompassing. Thus, contrary to Nagaiah's argument, the savings clause at § 204.5(h)(4) does not undermine the plain language of the regulation.

*Regulatory History.* Nagaiah next argues that the history of this regulation demonstrates that the final merits determination is unlawful. (Doc. No. 35 at 18–19.) He first points to the preamble of the 1991 proposed rule, which states that the proposed regulation implements the "extensive documentation" requirement by "including criteria reflective of the achievement of

extraordinary ability."[6]  (*Id.* (citing 56 Fed. Reg. at 30704 (July 5, 1991)).)  Based on the

preamble, Nagaiah reasons that USCIS must have intended for petitioners who satisfied

§ 204.5(h)(3) to qualify as a foreign national with extraordinary ability.

The Court disagrees.  The preamble to the 1991 proposed rule does not purport to

establish criteria that, if met, would require the agency to find extraordinary ability.  Rather, it

said the proposed rule included criteria "reflective" of achievement of extraordinary ability.

These criteria stemmed from a House Judiciary Committee Report that identified categories of

evidence that could show extraordinary ability.  *See* H. Rep. 101-723, pt. 1, at 59 (Sept. 19,

1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6739 ("Documentation may include publications in

respected journals, media accounts of the alien's contributions to his profession, and statements

of recognition of exceptional expertise by qualified organization.").  Nowhere in the rule or

legislative history is there proof that meeting these criteria would establish that a foreign national

in fact possesses extraordinary ability.  That is why the final rule describes the evidentiary

criteria as "initial evidence" that must "accompany[ ]" an extraordinary-ability visa petition.  8

C.F.R. § 204.5(h)(3).

*USCIS's Prior Interpretations*.  Last, Nagaiah contends that USCIS's prior interpretations

of the regulation demonstrate that the final merits determination is unlawful.  (Doc. No. 35 at

18–19.)  According to Nagaiah, USCIS's "historical and long held, contemporaneous reading of

the regulation excluded the inclusion of a requirement beyond a meeting of the criteria

enumerated at § 204.5(h)(3)."  (*Id.* at 19.)  To back up this bold claim, he cites to a USCIS

---

[6] The 1991 regulation was promulgated by USCIS's predecessor, the "Immigration and Naturalization Services ('INS')."  *Our History*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/about-us/our-history (last visited May 27, 2025).  After Congress passed the Homeland Security Act of 2002, USCIS "assumed responsibility for the immigration service functions of the federal government."  *Id.*

Ombudsman report from 2011.  (*See id.* (citing January Contreras, USCIS Ombudsman, *Recommendations to Improve the Quality in Extraordinary Ability and Other Employment-Based Adjudications* (the "Ombudsman Report") (Dec. 29, 2011)).)  The Ombudsman Report, in turn, cites three pieces of evidence to argue that until the *Kazarian* policy memorandum, the agency had interpreted § 204.5(h)(3) as a comprehensive standard to evaluate extraordinary-ability visas. The evidence includes (1) a 1992 letter from Acting Associate Commissioner Lawrence Weinig; (2) a proposed rulemaking in 1995 that was later withdrawn; and (3) a district court decision in *Buletini v. v. Immigr. & Naturalization Serv.*, 860 F. Supp. 1224, 1234 (E.D. Mich. 1994).  *See* Ombudsman Report at 2–4.

The Court finds that neither the Ombudsman Report nor its historical evidence shows that § 204.5(h)(3) has consistently been interpreted to be a comprehensive standard to evaluate extraordinary-ability visa petitions.  To start, the Ombudsman Report was not created by USCIS but rather by an independent officer who represents stakeholders that interact with USCIS.  6 U.S.C. § 272(a)–(c).  USCIS not only responded to the Ombudsman Report, but it also rejected the Report's claim that it had interpreted the regulation to mean that "satisfying the antecedent evidentiary prongs was sufficient to establish eligibility."  Lori Scialabba, Deputy Director of USCIS, *Response to Recommendations to Improve the Quality in Extraordinary Ability and Other Employment-Based Adjudications* (Aug. 31, 2012) (the "Response").

In the Response, USCIS dismissed the three pieces of evidence that the Ombudsman Report had relied on.  First, USCIS observed that Weinig's letter in 1992 did not say that meeting at least three evidentiary criteria in § 204.5(h)(3) sufficed to show extraordinary ability. Instead, Weinig wrote that *if* the evidence that satisfies § 204.5(h)(3) also shows that the foreign national has extraordinary ability, "there is no need for further documentation."  Response at 2–

3.  And Weinig confirmed that the agency's evaluation of extraordinary-ability visas "is not simply a case of counting pieces of paper."  Ombudsman Report at 3.

Second, USCIS explained away its proposed regulatory change in 1995.  To be sure, the proposed rule would have clarified that "[t]he fact that a [foreign national] may meet three of the listed criteria does not necessarily mean that he or she meets the standard of extraordinary ability."  Response at 3.  But this proposed change merely sought to "eliminate confusion" with the pre-existing rule and does not prove that the agency previously interpreted the rule as setting forth a comprehensive standard.  *Id.*

Third, USCIS observed that *Buletini*, 860 F. Supp. at 1234, confirms that there is an additional step beyond assessing whether the petitioner meets three of the criteria in § 204.5(h)(3).  Ombudsman Report at 3–4.  In *Buletini*, the district court found that if a foreign national satisfies § 204.5(h)(3), "the alien must be deemed to have extraordinary ability unless the [legacy] INS sets forth specific and substantiated reasons for its finding that the alien, despite having satisfied the criteria, does not meet the extraordinary ability standard."  *Id.*  Even if USCIS had adopted this adjudicatory approach, which is doubtful, USCIS rightly observed that *Buletini* contemplates an additional step beyond just satisfying § 204.5(h)(3) because if meeting the criteria were enough, there would "have been no need . . . to go any further."  *Id.* at 4; *see Etsy*, 2023 WL 3689555, at *17 (noting the lack of "evidence that USCIS ever promulgated a rule or adopted a uniform policy embracing *Buletini*").

\* \* \*

In short, the Court agrees with the Fifth Circuit's conclusion that the final merits determination does not conflict with USCIS's regulation.  *Amin*, 24 F.4th at 391–92.  The plain text of 8 C.F.R. § 204.5(h)(3) identifies initial evidence that must accompany an extraordinary-

ability visa application.  Though Nagaiah claims that once a petitioner meets this requirement, he or she establishes their eligibility, "[a]s most college applicants learn, submitting all the required application materials does not guarantee a favorable decision." *Id.* at 391.  Because the final merits determination is consistent with the regulation and statute, Nagaiah's *ultra vires* claim fails because such claims "are confined to extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court." *Fed. Express Corp.*, 39 F.4th at 764 (cleaned up).  That did not happen here.

### 3.    *The Kazarian Policy Memorandum is not a Legislative Rule*

Nagaiah's final claim in his first group of challenges is that the *Kazarian* policy memorandum, which formally adopted the two-step approach to adjudication for extraordinary-ability visas, is a legislative rule that required (but did not undergo) notice-and-comment rulemaking.  (Doc. No. 35 at 26.)  Defendants counter that the *Kazarian* policy memorandum was not required to go through notice-and-comment rulemaking because it was not a legislative rule.  (Doc. No. 38 at 15–17.)  The Court agrees with Defendants.

The APA creates a three-step process for agencies to use to create new rules.  *See* 5 U.S.C. § 553.  This process is called notice-and-comment rulemaking because the agency must first issue a notice of proposed rulemaking in the Federal Register, then invite comments from the public on the proposed rule and respond to them, and then publish the final rule.  *Id.*  "Rules issued through the notice-and-comment process are often referred to as legislative rules because they have the force and effect of law." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (internal quotations omitted).  Under the APA, however, "not all rules must be issued through the notice-and-comment process." *Id.*  The APA explicitly carves out "interpretive rules" from the

ordinary notice-and-comment rulemaking process.  5 U.S.C. § 553(b)(A).  So the key issue is

whether the *Kazarian* policy memorandum was a legislative or interpretive rule.

    While it is not always easy to distinguish between legislative and interpretive rules, the

Third Circuit has "developed guiding principles to aid in distinguishing them."  *Pa. Dep't of*

*Hum. Servs. v. United States*, 897 F.3d 497, 505 (3d Cir. 2018).  Legislative rules carry "the

force of law" and "impose new duties upon the regulated party."  *Id.* (internal quotations

omitted).  By contrast, interpretive rules "seek only to interpret language already in properly

issued regulations," "do not add language to or amend language in the statute," and "only remind

affected parties of existing duties."  *Id.* (internal quotations omitted).  In short, legislative rules

impose new duties upon regulated parties, while interpretative rules merely "advise the public of

the agency's construction of the statutes and rules which it administers."  *Mortg. Bankers Ass'n*,

575 U.S. at 97 (internal quotations omitted).

    The Court has no trouble joining the long line of out-of-circuit cases that have found the

*Kazarian* policy memorandum is an interpretive rule.[7]  Though Nagaiah complains that the

*Kazarian* policy memorandum has all the defining features of a legislative rule, the *Kazarian*

policy memorandum merely clarified "*when* the determination of extraordinary ability occurs in

the adjudicative process."  (Doc. No. 34-2 at 4.)  *See Amin*, 24 F.4th at 392 (explaining that the

*Kazarian* policy memorandum "merely clarifies the order in which agency adjudicators evaluate

---

[7] *See Amin*, 24 F.4th at 392 ("Because the Policy Memo does not create legal rights or
obligations, it is not a legislative rule subject to the notice-and-comment requirement."); *Impossible
Foods Inc. v. Jaddou*, No. 23-CV-02720-DMR, 2024 WL 235187, at *5 (N.D. Cal. Jan. 22, 2024) (ruling
that plaintiff failed to show that the *Kazarian* policy constitutes a legislative rule); *Etsy*, 2023 WL
3689555, at *20–23 (concluding that the *Kazarian* policy is an interpretive rule and thus not subject to the
notice-and-comment requirements for legislative rules); *Viswanadha*, 660 F. Supp. 3d at 770–75 (finding
that the *Kazarian* policy memorandum is "interpretive in nature and does not alter any substantive right");
*Biyani v. U.S. Citizenship & Immigr. Servs.*, No. 4:22CV3032, 2022 WL 17326211, at *5–7 (D. Neb.
Nov. 29, 2022) (disagreeing with plaintiff that the *Kazarian* policy memorandum required notice-and-
comment rulemaking).

the evidence").  And as explained in the previous two subsections, the two-step analysis set forth

in the *Kazarian* policy memorandum is consistent with both the governing statute—8 U.S.C.

§ 1153(b)(1)(A)—and the regulation—8 C.F.R. § 204.5(h).  At most, the *Kazarian* policy

memorandum changed the order of operations when evaluating a visa application, stated what

USCIS thought of the statutes and rules which it administers, and reminded affected parties of

existing duties.  *See Etsy*, 2023 WL 3689555, at *22.  Because the memorandum did nothing

more and imposed no "new duties upon" visa applicants, it was not a legislative rule that

required notice-and-comment rulemaking.  The *Kazarian* policy memorandum was instead an

interpretive rule.

Nagaiah tries to resist this conclusion but to no avail.  His best evidence is a 1995

proposed notice of rulemaking, which was also cited in the Ombudsman Report.  This proposed

rule would have clarified that merely satisfying 8 C.F.R. § 204.5(h)(3) is not enough to establish

eligibility for the extraordinary-ability visa.  (Doc. No. 35 at 9–10 (citing *Employment-Based

Immigrants*, 60 Fed. Reg. 29771, 29775 (June 6, 1995)).)  In *Etsy*, 2023 WL 3689555, at *14, the

district court rejected an identical argument because "[p]laintiffs have not cited—and the [c]ourt

has not found—that initially offering a rule in a package submitted for notice and comment is a

concession by the agency that the rule necessarily is 'legislative' and requires notice and

comment."  Nor did the court in *Etsy* find any caselaw, saying that withdrawing a proposed rule

"estops the agency from adopting the rule without adhering to notice-and-comment procedures if

the agency determines that the rule is not subject to such procedures."  *Id.*  In short, Nagaiah's

best evidence does not prove that the *Kazarian* policy memorandum is a legislative rule, and it

28

does not alter the key analysis under the APA, which is whether the rule adds language to or amends the statute or creates new rights or obligations.[8]

The Court also disagrees with Nagaiah that the *Kazarian* policy memorandum changed the agency's long-held policy by adding a requirement not enumerated at 8 C.F.R. § 204.5(h)(3). (Doc. No. 40 at 5–6.) As decisions like *In re Price*, 20 I. & N. Dec. 953, 956 (B.I.A. December 29, 1994) show, even before the *Kazarian* policy memorandum, USCIS and its predecessors used an overall analysis to evaluate whether visa applicants possessed extraordinary ability and had sustained national and international acclaim. Though former agency adjudicators collapsed this analysis with their analysis of the initial evidentiary requirements, a final merits determination based on all the record evidence occurred long before the *Kazarian* policy memorandum was issued.

\* \* \*

In sum, the *Kazarian* policy memorandum is an interpretive rule. It does not add to the statute, amend the statute, or create new duties for visa applicants. Instead, it announced USCIS's interpretation of the governing statute and regulation and clarified the order in which adjudicators would evaluate petitioners' evidence. The Court thus finds that the *Kazarian* policy memorandum was exempt from the notice-and-comment rulemaking procedures because it was an interpretive rule.[9] *See* 5 U.S.C. § 553(b)(A).

---

[8] For a similar reason, the Court is unpersuaded by the fact that INS labeled its 1995 notice of proposed rulemaking as a "substantive" rule. (Doc. No. 37-1 at 2.) As Defendants explain, because the notice of proposed rulemaking proposed *many unrelated changes*, it is unsurprising that the rule was labeled substantive. (Doc. No. 38 at 16–17.) Plus, Nagaiah cites no cases where an agency's characterization of a proposed rule as substantive had a preclusive effect on the court.

[9] In his motion for summary judgment, Nagaiah briefly argues that USCIS acted arbitrarily and capriciously by adopting the *Kazarian* policy without acknowledging that it changed the adjudicative process for visa applications and without explaining its reasons for the change. (Doc. No. 35 at 27–28.) This argument is meritless. In the *Kazarian* policy memorandum, USCIS acknowledged that it was

Nagaiah raised a slew of challenges against USCIS's two-step approach to the adjudication of extraordinary-ability visa petitions. But because none of his challenges persuades, the Court grants Defendants' motion for summary judgment on Counts III and IV of Nagaiah's Second Amended Complaint and denies Nagaiah's motion for summary judgment.

**B.      USCIS's Denial of Nagaiah's Petition Was Not Arbitrary and Capricious**

Having dismissed Nagaiah's threshold procedural challenges, the Court now turns to his claim that the denial of his petition on October 23, 2023, was arbitrary and capricious. Because this is a "final" agency action, the Court can review it. 5 U.S.C. § 704. Defendants move for summary judgment on this claim because they say USCIS properly concluded that Nagaiah did not show that he qualifies as a foreign national with extraordinary ability. (Doc. No. 34 at 24.) Nagaiah counters with a scattershot approach as to what USCIS did wrong in its denial of his petition. (Doc. No. 39 at 8–14.) He says, among other things, that USCIS impermissibly held him to a heightened standard, overlooked probative testimonial evidence, and incorrectly weighed the evidence at the final merits determination. (*Id.*) For the reasons below, the Court agrees with Defendants.

Recall that in USCIS's denial of Nagaiah's petition, it first determined that he had met the initial evidentiary requirement of 8 C.F.R. § 204.5(h)(3). (Doc. No. 28-2 at 4.) It found that he commanded a high salary, participated as a judge of others in his field, and authored scholarly articles that were published in major media. (*Id.*) Because he had satisfied at least three of the ten evidentiary criteria, USCIS proceeded to make a final merits determination. (*Id.* at 6.) At the

---

changing the order in which evidence was evaluated and explained that the change was made to "more clearly explain how evidence was considered," identify "the basis for the overall determination of eligibility (or lack thereof)," and lead to "greater consistency in decisions on petitions for aliens with extraordinary ability." (Doc. No. 34-2 at 4.) Because USCIS acknowledged the change and explained its reasons for it, the Court rejects Nagaiah's argument that USCIS arbitrarily and capriciously adopted this policy.

final merits determination, USCIS ruled that Nagaiah had failed to show that he had sustained national or international acclaim and that he had risen to the top of his field. (*Id.* at 6–10.) And because he failed to make this showing, USCIS denied his extraordinary-ability visa petition.

To start, Nagaiah challenges USCIS's finding that he had not satisfied 8 C.F.R. § 204.5(h)(3)(viii)—evidence of his leading or critical role in a company with a distinguished reputation. (Doc. No. 39 at 8–10.) But his challenge to USCIS's finding at step one does not move the needle because USCIS determined that Nagaiah prevailed at step one. (*See* Doc. No. 28-2 at 6.) Indeed, USCIS found that Nagaiah met at least three evidentiary criteria and denied his petition at step two—the final merits determination. (*See* Doc. No. 28-2 at 6.) Unless Nagaiah can show that the USCIS erred at step two, the final merits determination, the error he complains about at step one is harmless. *See Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot.*, 833 F.3d 360, 377 (3d Cir. 2016) (applying "a harmless error analysis" under the APA). As explained below, however, USCIS analyzed all his evidence and properly found that it did not show that he had sustained national or international acclaim, nor did it show that he had risen to the very top of this field.

Nagaiah challenges USCIS's final merits determination on several grounds, but none persuades. First, he says USCIS ignored his letters of support as well as evidence of his mentorship. (Doc. No. 39 at 9–10.) But USCIS addressed the letters of support that Nagaiah had submitted. It explained that while these letters highlighted some of his accomplishments, they failed to show his sustained national or international acclaim. (Doc. No. 28-2 at 8–9.) Though Nagaiah complains that USCIS failed to give these letters the "appropriate weight," the record shows that USCIS "did give some weight to the letters—just not the weight [Nagaiah] would prefer. In these circumstances, the Court cannot conclude that [USCIS's] decision was

arbitrary." *Visinscaia v. Beers*, 4 F. Supp. 3d 126, 135 (D.D.C. 2013).  Nor is the Court

persuaded that USCIS's decision was arbitrary and capricious because it did not make written

findings about his evidence of mentorship.  (Doc. No. 39 at 12.)  As many other courts have

found, "the agency need not provide written findings about every piece of evidence that it

consider[s]." *Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022)

(internal quotations omitted).  Thus, USCIS's decision was not arbitrary and capricious because

it did not make written findings about Nagaiah's evidence that he mentors others.

Nagaiah next argues that in its final merits analysis, "USCIS imposed an unreasonably

heightened standard" and misapplied the *Kazarian* policy framework.  (Doc. No. 39 at 10–11.)

Neither argument has merit.  At the final merits determination, USCIS assessed whether Nagaiah

had shown, "by a preponderance of evidence," that he had sustained national or international

acclaim and that he had accomplishments, which indicated that he had risen to the very top of his

field.  (Doc. No. 28-2 at 6.)  Thus, USCIS applied the correct standard of proof and faithfully

followed the *Kazarian* policy framework.  *See* USCIS, 6 USCIS Policy Manual F.2.B.2,

https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2 (last visited May. 27, 2025).

Nagaiah then complains that USCIS failed to consider the totality of the evidence in

making its final merits determination.  (Doc. No. 39 at 10–11.)  Not so.  USCIS did exactly what

arbitrary and capricious review demands:  it addressed Nagaiah's evidence and explained why it

did not show his eligibility as a foreign national with extraordinary ability.  It explained that

Nagaiah's IEEE membership did not show extraordinary ability because the eligibility

requirements were not stringent enough and that he lacked evidence that he became an IEEE

senior member because of his sustained national or international acclaim.  (*Id.* at 7.)  Likewise,

his book review and scholarly articles did not automatically place him at the top of his field.  (*Id.*

32

at 7–8.)  USCIS next explained that there was not enough evidence that Nagaiah's patent constituted a major contribution in his field, and so there was no evidence that his patent led to sustained national or international acclaim.  (*Id.*)  It then considered the letters from his employers, which set forth his accomplishments, but USCIS discounted this evidence because it lacked corroborating records.  (*Id.* at 8–9.)  Plus, Nagaiah did not provide "objective documentary evidence" to show that his roles with his former employers led to sustained national or international acclaim.  (*Id.*)  Last, USCIS found that while his high salary demonstrated recognition of his skillset, the record did not show that his earnings were so high as to indicate that he is one of a small percentage at the top of his field, or that his salary was reflective of sustained national acclaim.  (*Id.* at 8–9.)  In short, USCIS considered the totality of the evidence and found that it did not show that Nagaiah had sustained national or international acclaim, nor did it show that he had risen to the top of his field.  (*Id.* at 6–9.)

Nagaiah last asks the Court to reweigh the evidence and reverse USCIS's decision.  (Doc. No. 39 at 11–14.)  But in APA cases, like this one, the role of the Court is not to reweigh the evidence and make its own findings of fact.  Instead, "the administrative agency is the finder of fact," and its "decision should only be reversed when the evidentiary record is so compelling that no reasonable factfinder could fail to find to the contrary."  *Byrne*, 2014 WL 2742800, at *3 (internal quotations omitted), *aff'd sub nom. Byrne v. Sec'y U.S. Dep't of Homeland Sec.*, 618 F. App'x 143 (3d Cir. 2015); *see also Kapoor*, 763 F. Supp. 3d at 259 ("The role of this Court is to review the Decision under the narrow arbitrary and capricious standard — this Court cannot substitute its judgment for that of USCIS.").  Here, the Court finds as a matter of law that the "evidence in the administrative record" permitted USCIS "to make the decision it did."  *Bhanu*, 2023 WL 6119357, at *4 (internal quotations omitted).

* * *

In short, "after evaluating the evidence, USCIS reached the familiar conclusion" that Nagaiah does not qualify as a foreign national with extraordinary ability.  *Joseph*, 2025 WL 458001, at *4.  "Viewed altogether, USCIS's decision to deny" Nagaiah's petition at the final merits determination "had a 'rational connection between the facts found and the choice made.'" *Bhanu*, 2023 WL 6119357, at *9 (quoting *J. Andrew Lange, Inc. v. FAA*, 208 F. 3d 389, 391 (2d Cir. 2000)).  Thus, USCIS's decision was not arbitrary and capricious, and so the Court grants Defendants' motion for summary judgment on Counts I and II of Nagaiah's Second Amended Complaint.[10]

## IV.    Conclusion

The Court appreciates Mr. Nagaiah's expertise as an Oracle Digital Solutions Manager. But he applied for a difficult visa to get and did not make the required showing to get it.  So the Court grants Defendants' motion for summary judgment and denies Nagaiah's motion.  An appropriate Order follows.

---

[10] Count II of Nagaiah's Second Amended Complaint sought injunctive relief to delay the effectiveness of USCIS's denial of his petition.  (Doc. No. 29 at 16.)  Because the Court concludes that USCIS's denial was not arbitrary and capricious, there is no "likelihood of success on the merits" and thus no basis for the Court to grant Nagaiah a preliminary injunction.  *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024) (failing to meet "[a]ny one factor may give a district court reason enough to exercise its sound discretion by denying an injunction").  The Court thus grants Defendants' motion for summary judgment on Count II of Nagaiah's Second Amended Complaint.